## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA UEBERROTH and | : | |
| UB MANAGEMENT, LLC | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 11-3119** |
| | : | |
| v. | : | |
| | : | |
| GOLDNER, PAPANDON, CHILDS & | : | |
| DELUCCIA, LLC, et al. | : | |
| **Defendants,** | : | |
| | : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                            **March 12, 2012**

Plaintiffs in this case have filed a nine-count complaint against multiple defendants,
including entities from which Plaintiff Ueberroth received investment advice, entities with which
she invested money, and principals of those entities.  The complaint alleges professional
malpractice (Count I), breach of fiduciary duty (Count II), conversion of the money Plaintiffs
invested (Count III), civil conspiracy to convert Plaintiffs' funds (Count IV), breach of contract
(Counts V and VI), civil aiding and abetting (Count VII), successor liability (Count VIII), and
unjust enrichment (Count IX).[1]

Now before the Court are two motions to dismiss Counts III and IV of Plaintiffs'
Complaint, one filed by Richard Chakejian,[2] and the second filed by Michael J. Goldner, GPCD
Partners, LLC ("GPCD"), and J&M Real Estate Holding ("J&M").   For the reasons set forth

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the amount in controversy
exceeds $75,000, and the dispute arises between citizens of different states.  The citizenship of a limited liability
company is determined by the citizenship of its members.  Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d
412, 419-20 (3d Cir. 2010).  Although UB Management, LLC is located in Wyomissing, Pennsylvania, the sole
member of UB Management LLC is Plaintiff Lisa Ueberroth, a citizen of Arizona.  As all defendants are citizens of
Pennsylvania, and both Plaintiffs are citizens of Arizona, the dispute arises between citizens of different states.

[2] Chakejian is named as a defendant only in Counts III and IV.

below, Chakejian's motion will be granted, and the motion by Goldner, GPCD and J&M will be denied.

## I.   BACKGROUND

After the death of her husband in 2003, Plaintiff Ueberroth had $3,000,000 which she wished to invest.  She sought investment advice from Defendant Goldner, Papandon, Childs & DeLuccia, LLC ("Goldner LLC"), as that firm had provided accounting services for her late husband's dental practice.  Goldner LLC provided her with an investment plan (the "Plan"), which included a $2,000,000  "Bank Investment Through Arcadia Capital Group."[3] The Plan indicated that Ueberroth's $2,000,000 principal investment would be deposited in four banks and Ueberroth would receive a 6% guaranteed interest rate each year.  It further indicated that $1,500,000 would always be available to her, with no fees for withdrawal, and that the balance would be available to her with 120 days notice.

In connection with the investment described above, Ueberroth signed a one-page Letter of Intent with Arcadia Capital Group, Inc. ("Arcadia") on July 15, 2003.  The Letter of Intent identifies Lisa Ueberroth as the investor, and, under the caption "Transaction Structure," states that she will receive $120,000 per year in interest payments, with minimum monthly payments of $10,000.  The Letter of Intent further notes that the term of the investment will be ten years with an option to renew.  Unlike the Plan, the Letter of Intent does not state the amount of money to be invested in exchange for the interest payments set forth therein.[4]  It also makes no mention of

---

[3] See Complaint, Exh. A.

[4] However, the Plan represented that $2,000,000 would be deposited in various banks and would return 6% interest, which would result in $10,000 per month and $120,000 annual interest.

2

how the funds would be invested, and does not address Ueberroth's right to access the principal invested. The Letter of Intent is captioned as "binding," but provides an opportunity for both parties to conduct a "legal, operational, and financial due diligence review of each other, the Company, its business and affairs, commencing upon execution of this term sheet and completed prior to Closing." Neither party alleges that a closing document was ever prepared, agreed to, or signed. Beginning in 2006, Arcadia stopped making regular interest payments to Ueberroth, and she alleges that the $2,000,000 principal is now unaccounted for. This missing principal is the subject of Counts III and IV.

Upon Goldner LLC's advice, Ueberroth also invested $500,000 in J&M, a real estate investment company solely owned by Goldner and co-defendant Papandon, for which she was promised a 10% share in J&M. The parties signed a term sheet memorializing this stock-purchase agreement.[5]  Breach of this stock-purchase agreement is alleged in Count VI of the Complaint.

Finally, Ueberroth invested $500,000 in a real estate property referred to as the Bookbinder's Building, through Plaintiff UB Management, LLC, a limited liability company of which Ueberroth is the sole member, which was allegedly created by Goldner LLC for the purpose of the Bookbinder's Building deal. The investment was memorialized in a Term Sheet, a Promissory Note, and a Mortgage,[6] which are the subject of Plaintiffs' breach of contract claims at Count V of her complaint.

---

[5] Complaint, Exh. C.

[6] Complaint, Exh. B.

3

## II. STANDARD OF REVIEW

In determining whether a motion to dismiss should be granted the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences therefrom in favor of the non-moving party.[7] A court may also look to any attachments to the complaint and documents incorporated into the complaint by reference or explicitly relied upon in the complaint, but may not consider matters extraneous to the pleadings.[8]

Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[9] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[10] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[11] Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations.[12]

## III. DISCUSSION

### A. Liability of the Individual Defendants

Defendants Chakejian and Goldner have moved to dismiss the claims brought against

---

[7] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[8] Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007); U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

[9] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[10] Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[11] Id. (citing McGregor v. Indust. Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[12] Id. at 555, 564.

4

them personally.

Under Pennsylvania law, "corporate officers cannot be held liable for the alleged torts committed by the corporation simply by virtue of their offices."[13] In order to find a corporate officer or shareholder personally liable for the conduct of the corporation, a plaintiff must show that the officer or shareholder actively participated in the alleged tortious conduct, or that piercing the corporate veil is appropriate.[14]

      1. Chakejian

Plaintiffs have asserted claims for conversion and conspiracy to convert against Chakejian personally, as well as asserting these claims against Arcadia, of which Chakejian is allegedly a principal. However, Plaintiffs have not alleged any actions, omissions, or directions given by Chakejian himself which led to the tortious acts complained of, nor any other facts from which the Court can infer that Chakejian, in his personal capacity, was an active participant in the alleged conversion or conspiracy to convert. Nor have Plaintiffs alleged any facts in support of piercing the corporate veil, such as failure to observe corporate formalities, siphoning of funds by a stockholder, absence of corporate records, etc.[15]

Because Plaintiffs have failed to set forth sufficient facts to state a claim against Chakejian for conversion (Count III), Plaintiffs cannot state a claim for conspiracy to convert

---

[13] McCracken v. Daimler Chrysler Motors Co. LLC, 2008 U.S. Dist. LEXIS 26912, at *7-8 (E.D. Pa. Apr. 3, 2008) (citing Chester-Cambridge Bank & Trust Co. v. Rhodes, 31 A.2d 128 (Pa. 1943).

[14] Zubik v. Zubik, 384 F.2d 267, 275 (3d Cir. 1967).

[15] United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981).

(Count IV).[16]  As Chakejian is listed as a Defendant only in Counts III and IV, the Court will

dismiss all claims against Chakejian, without prejudice and with leave to amend.

      2. <u>Goldner</u>

      Goldner is alleged to have created the overall investment plan on which Ueberroth relied,

and it is further alleged that he had a personal stake in each of the three investment deals at issue.

For example, he signed the Mortgage and the Promissory Note as the borrower in the

Bookbinder's Building deal, and he is alleged to be an owner of J&M.  Goldner is also alleged to

be a principal of Arcadia.  In a letter to Ueberroth, Goldner told her he had negotiated terms with

Arcadia for her investment, and told her he had "complete access to their books and records at all

times."  When Ueberroth expressed interest in the proposed investment, Goldner signed the

Letter of Intent on behalf of Arcadia.  These facts are sufficient to state a claim against Goldner

personally under the active participant theory of liability, so long as the pleadings are otherwise

adequate.

      B. <u>The Conversion and Conspiracy to Convert Counts are Adequately Pled</u>

      The Court now turns to whether Plaintiffs have adequately stated a claim for conversion

and conspiracy to convert against Goldner, GPCD, and J&M.

      "Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel

or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and

---

[16] "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy
to commit that act." <u>McKeeman v. Corestates Bank, NA</u>, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citing <u>Pelagatti v.
Cohen</u>, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987); <u>see also</u> <u>Koresko v. Solis</u>, No. 09-3152, 2011 WL 5447435, at *
9 (E.D. Pa., Nov. 10, 2011).

without lawful justification."[17]  A cause of action in conversion is properly asserted if the

plaintiff had actual or constructive possession of a chattel or an immediate right to possession of

a chattel at the time of the alleged conversion.[18]  Money may be the subject of conversion.[19]

Defendants argue that Plaintiffs' conversion claims are barred by the "gist of the action"

doctrine, which prevents a plaintiff from recasting a breach of contract claim as a tort claim.[20]

Specifically, Defendants argue that any duty owed to Plaintiffs arises out of the Letter of Intent

between Ueberroth and Arcadia, and is thus contractual.[21]  Defendants also argue that Plaintiffs

have no immediate right to possession of the invested funds, and hence cannot satisfy each

element of a cause of action for conversion.

Plaintiffs argue that the conversion claims are not barred by the gist of the action doctrine

because Goldner LLC, GPCD, and J&M are not parties to that Letter of Intent, and note that

where a defendant is not a party to a contract, conversion can occur even regarding funds which

are due under the terms of a contract.[22]  Plaintiffs further argue that the Letter of Intent is not a

---

[17] Rapid Cricuits, Inc. V. Sun Nat'l Bank, 2011 U.S. Dist. LEXIS 47231, at *30 (E.D. Pa. May 2, 2011) (quoting Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003)); see also Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc., 138 Fed Appx. 431, 433 (3d Cir. 2005).

[18] Chrysler Credit Corp. V. B.J.M., Jr. 834 F. Supp. 813, 844 (E.D. Pa. 1993); Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994).

[19] Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio, 2011 U.S. Dist. LEXIS 140462, at *23 (E.D. Pa. Dec. 6, 2011); Montgomery v. Fed. Ins. Co., 836 F. Supp. 292, 300 (E.D. Pa. 1993); Schonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987).

[20] eToll v. Elias/Savion Adver., 811 A.2d 10, 14, 19 (Pa. Super. Ct. 2002) (the doctrine bars tort claims which arise solely from a contract between the parties, where the duties breached are created by the contract, where liability stems from a breach of the contract, or where the claim's success is dependent upon the terms of the contract); see also Bohler-Uddeholm Am., Inc. v. Ellwood Gr., 247 F.3d 79, 103-104 (3d Cir. 2001).

[21] Although the Complaint is not clear on this point, the parties implicitly agree that the Letter of Intent is the only document at issue in Counts III and IV.

[22] Levert v. Phila. Int'l. Records, No. 04-1489, 2005 WL 2271862, at *3 (E.D. Pa. Sept. 16, 2005).

7

contract, and thus their conversion claims cannot be barred by the gist of the action doctrine. And finally, Plaintiffs argue that Federal Rule of Civil Procedure 8(e)(2) allows parties to plead alternative theories of liability.

The Court agrees that Plaintiffs fail to allege facts from which the Court can infer that Goldner LLC and its successor-in-interest GPCD are parties to the Letter of Intent.  J&M is also not a party to the Letter of Intent.  Therefore, the Letter of Intent does not create any contractual obligations between those defendants and Plaintiffs with regard to the $2,000,000 which is the subject of the Letter of Intent.  Consequently, Count III is not barred by the gist of the action doctrine with regard to these defendants.

Goldner, on the other hand, is a signatory to the Letter of Intent, and the signature line notes that he is a member of Arcadia.  Therefore, the Court must look to whether the Letter of Intent has the elements of an enforceable contract: 1) a manifestation by the parties of an intent to be bound; 2) terms sufficiently definite to be specifically enforced; and 3) consideration.[23]

Although the Letter of Intent is captioned as "Binding," it clearly provides an opportunity for both parties to conduct a due diligence review prior to closing, which indicates that the Letter of Intent is merely evidence of preliminary negotiations over terms.  Only the closing documents would form a binding contract between the parties.[24]  An agreement to enter into a binding agreement in the future, with or without evidence of preliminary negotiations, does not constitute a contract.[25]

---

[23] Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986).

[24] Neither party alleges that a closing document was ever prepared, agreed to, or signed.

[25] Channel Home Ctrs., 795 F.2d at 298.

Furthermore, the Letter of Intent does not include a complete list of the terms discussed by the parties. For example, it does not mention the amount of money to be invested (the consideration) in exchange for the interest payments set forth therein, how the funds would be invested, or Plaintiffs' right to access the principal invested. The Letter of Intent may create some expectations between the parties, but it clearly does not contain all the terms contemplated by the parties, and as such the written document does not form an enforceable contract.[26] Therefore, Count III is not barred by the gist of the action doctrine.

Turning to the elements of conversion, the Court is unpersuaded by Defendants' argument that Plaintiffs cannot state a claim for conversion because they had no immediate right of possession to the funds invested. The Letter of Intent does not address this issue, but the Plan states that $1,500,000 of the money invested with Arcadia would be immediately available to Ueberroth at any time. Based on the current record, the Court finds that Plaintiffs have adequately pled immediate right of possession to the funds invested with Arcadia.

Finally, in support of their motion to dismiss Count IV, Defendants argue only that if Plaintiffs have failed to state a claim for conversion, there is no predicate cause of action on which to base a claim for civil conspiracy. As the Court has found Plaintiffs have stated a claim for conversion, the Court will not dismiss the conspiracy to convert claim.

## IV.    CONCLUSION

For the reasons set forth above, Chakejian's motion to dismiss will be granted, and the motion to dismiss filed by Goldner, GPCD and J&M will be denied.

An appropriate Order follows.

---

[26] Even if the Court construed the Letter of Intent as a contract, the only duty created therein is Arcadia's duty to pay interest to Ueberroth. Therefore, the Court finds that a breach of contract action would not compensate Ueberroth for the missing principal, and hence the conversion claim is not barred by the gist of the action doctrine.

9